UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LYNWODE PAQUETTE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 04-12084-WGY |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM AND ORDER

For the reasons stated below, plaintiff's application to proceed without prepayment of fees is denied as moot, and this action shall be dismissed.

BACKGROUND

On September 17, 2004 plaintiff Lynwode Paquette (a/k/a Lynwood Parquette, as he appears in the Department of Corrections records), filed a *pro se* complaint which the Clerk's Office has opened as a §1983 civil rights action, although his complaint appears to contain both civil rights and habeas claims. Whether he is a "prisoner" "in custody" is also not entirely clear. He also filed a request for appointment of counsel, and a motion to proceed *in forma pauperis.*

The Complaint names the United States as a defendant, however, the Affidavit in support also states that the action is against the Worcester County District Attorney's Office. The Complaint itself (Docket No. 3), is entitled "Motion for DeNaturalization."

The gist of his complaint and affidavit appears to be twofold. First, Paquette complains about the circumstances revolving around his 1994 criminal rape charge and conviction (See attachment,

1

Affidavit of Sean Piggott), in which he alleges a number of instances of misconduct and corruption in the Worcester District Attorney's Office, including "fabricat[ing] false charges against the Plaintiff." (Complaint, ¶1). He claims the District Attorney violated his equal protection rights, obstructed justice, withheld evidence, proffered false testimony of the victim, and wilfully intended to inflict harm on the Plaintiff (Complaint, ¶¶2-6). He also claims he was wrongfully denied DNA testing, that he is innocent and was wrongfully sentenced to ten years imprisonment. (Complaint, ¶¶7,8).

As a result, Paquette states, (presumably as his claim for relief): "Plaintiff feels that the Federal Court should investigate this Complaint against the District Attorney's Office and the Corruption in that Office." (Complaint, ¶9). He does not seek monetary damages in either the Complaint or the Affidavit.

Second, as a result of his perceived wrongful conviction, Plaintiff seeks "to renounce his citizenship and is requesting deportation to South America." The specific country is not named. He states in his Affidavit: "Plaintiff feels that his rights were violated, and that this is the only recourse left him." (Affidavit, ¶1). He further states: "The Plaintiff would rather renounce his citizenship and be deported to another country, than remain in the United States." (Affidavit, ¶2). "...Plaintiff is bringing this action to begin Denaturalization proceedings so that he can be deported to another country." (Affidavit, ¶3). Plaintiff asserts that as a "naturalized citizen" of the United States, he has the "right of freedom of choice under the Fourteenth Amendment to bring this action." (Affidavit, ¶5). He further "demands deportation A.S.A.P. under his Fourteenth Amendment rights." (Affidavit, ¶6).

ANALYSIS

I. The Court may screen this action.

Because Paquette has moved to file without prepayment of fees, a preliminary review of his

complaint is authorized to determine whether it satisfies the requirements of the federal *in forma pauperis statute*, 28 U.S.C. §1915.  Section 1915 of Title 28 empowers federal courts to dismiss actions in which a plaintiff seeks to proceed without prepayment of fees if the action lacks an arguable basis either in law or fact, Neitzke v. Williams, 490 U.S. 319, 325 (1989), or if the action fails to state a claim on which relief may be granted or seeks monetary relief against a defendant who is immune from such relief.  See 29 U.S.C. §1915(e)(2).

An *in forma pauperis* complaint may be dismissed *sua sponte* and without notice under §1915 if the claim is based on an indisputably meritless legal theory or factual allegations that are clearly baseless.  Id.; Denton v. Hernandez, 504 U.S. 25, 32-33 (1992).  To the extent that Paquette is seeking habeas relief, Rule 4(b) of the Rules Governing §2254 cases requires the Court to examine a petition, and if it "plainly appears from the face of the motion...that the movant is not entitled to relief in the district court," the court "shall make an order for its summary dismissal."  Rule 4(b). McFarland v. Scott, 512 U.S. 849, 856 (1994) (habeas petition may be dismissed if it appears to be legally insufficient on its face).  A petition for writ of habeas corpus may also be summarily dismissed if it fails to set forth facts that give rise to a cause of action under federal law.  28 U.S.C. §2243; Marmol v. Dubois, 885 F. supp. 444,446 (D. Mass. 1994).

Even construing Paquette's complaint generously, Haines v. Kerner, 404 U.S. 519, 520-21 (1972), his complaint/petition is subjection to dismissal for the reasons set forth below.

II.  Deficiencies with Paquette's Application to Proceed *in forma pauperis*.

As a threshold matter, Paquette's filings present a number of fatal deficiencies which prevent a

determination of the appropriate filing fee applicable to his complaint at this time.

   A.  <u>The filing fee issues cannot be assessed since Paquette's custodial status is unclear</u>.

From the record, it appears that on September 15, 2004, Paquette mailed his action from the Adult Correctional Center (ACI), a medium security prison facility located in Cranston, Rhode Island. On his initial pleading, however, Paquette states that he completed his prison term on September 12, 2004, three (3) days prior to his mailing. He did not indicate the reason for his continued confinement, and he did not specify on his *in forma pauperis* application whether he was a "prisoner" or not. Subsequently, Paquette sent to the Court a statement of his inmate account transactions from the Massachusetts Treatment Center at Bridgewater, MA. He also provided information from MCI Norfolk, a Massachusetts facility. The chronology of his incarcerative status is unclear from the record.

A check with the Records Department with the Massachusetts Department of Corrections revealed that on October 28, 2004, Paquette was released to a "civil commitment." The Department's records indicate that he is no longer at ACI in Rhode Island, but is currently housed at the Lemmuel Shadduck facility in Massachusetts. To date, Paquette has failed to keep this Court advised of his whereabouts, in violation of Local Rule 83.5.2(e).

Thus, at the time Paquette filed his complaint, it is unclear whether he was a "prisoner" as defined in 28 U.S.C. §1915, or whether he was in custody pursuant to a civil commitment order. The distinction is relevant, since civil committees are not deemed to be "prisoners" under §1915 and therefore not subject to the installment fee payment requirements imposed on civil actions filed by "prisoners." <u>See</u> <u>King v. Greenblatt</u>, 53 F. Supp.2d 117, 138 (D. Mass. 1999). Therefore, it is

impossible at this junction to determine whether Paquette would qualify for a complete waiver of the $150 filing fee for civil actions, or whether an initial partial filing fee should be assessed at this time.

    B.  <u>The filing fee issues cannot be assessed since the characterization of Paquette's action as a habeas petition and/or civil action is unclear.</u>

Paquette styles his "complaint" for relief as a "Motion for Denaturalization" in which he seeks to renounce his citizenship and be immediately deported to South America. He states his motivation for this is that he has exhausted his avenues for contesting his criminal conviction and wants to leave this country at this time, as it is the "only recourse" left him. Thus, by seeking immediate deportation, Paquette is, in essence, seeking immediate release from custody. In light of this, his claim for relief can be categorized as in the nature of a habeas petition under 28 U.S.C. §2254 or §2241[1]. See <u>Medberry v. Crosby</u>, 351 F.3d 1049 (11th Cir. 2003)(state prisoner seeking post-conviction relief has but one remedy: an application for writ of habeas corpus); <u>Koos v. Holm</u>, 204 F. Supp. 2d 1099, 1101 (W.D.TN 2002)(only relief available for prisoner seeking to be immediately deported, thus asserting a right to complete release from confinement, was through a writ of habeas corpus, citing <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 500 (1973)). There is a $5.00 fee for habeas petitions. See 28 U.S.C.

---

[1] In order to entertain a §2254 petition, Paquette must have been in custody under the conviction or sentence under attack at the time his petition was filed. <u>Stevenson v. Summers</u>, 258 F.3d 520, 522 (6th Cir. 2001) <u>citing</u> <u>Maleng v. Cook</u>, 490 U.S. 488, 490-91 (1989)(per curiam). Here, there is a question of whether Paquette was still serving his state sentence at the time his petition was filed, since he claims his sentence expired three (3) days earlier. However, his claims for deportation do not necessarily invoke a challenge to his underlying conviction and sentence, and therefore could be considered to fall under the purview of §2241. The issue need not be resolved at this time, in view of the summary dismissal, for the reasons stated herein.

§1914(a)(filing fees); §1915 (proceedings *in forma pauperis*).

Moreover, Paquette also complains of the alleged wrongful conduct of the District Attorney's Office in connection with his underlying criminal case. He also seeks to immediately renounce his citizenship, claiming he has a due process right to do this. In contrast to the deportation claims, these claims can be categorized as a civil rights action under 42 U.S.C. §1983. There is a $150.00 filing fee for civil actions.

Thus, Paquette's claims may could be characterized as encompassing <u>both</u> elements of a habeas petition and a civil rights action. However, I need not reach these *in forma pauperis* issues at this time, in view of this Order for summary dismissal of this action, for the reasons set forth below.

III.  <u>Paquette's prior actions in this District bar relief in this case</u>.

A.  <u>Prior habeas relief sought by Paquette; habeas request is nevertheless deficient Under Rule 2 of the Rules Governing habeas petitions</u>.

On April 13, 2000, Paquette filed in this District, a §2254 habeas petition, assigned to Judge Edward F. Harrington as <u>Paquette v. Commonwealth of Massachusetts</u>, C.A. 00-10808-EFH, <u>aff'd</u> No. 00-2368 (1st Cir. 2001). That action was dismissed for failure to exhaust his state court remedies. Here, Paquette simply provides no information on whether he has exhausted state remedies or seeks to renew a §2254 habeas petition.[2]

Even if Paquette meant to raise a collateral attack on his underlying criminal conviction based on the alleged wrongful conduct of the prosecutors, his petition fails to meet the requirements of Rule 2

---

[2] Since the petition was not a dismissal on the merits, it would seem the habeas petition would not be a second or successive petition requiring leave of the Court of Appeals. In any event, this action is dismissed on other grounds, and I need not resolve this issue at this time.

of the Rules Governing Section 2254 cases in the United States District Courts (which may be applied to other habeas petitions at the Court's discretion).  Under the Rules Governing Section 2254 cases, a habeas petition must specify all grounds of relief that are available to the Petitioner, and must set forth in summary form the facts supporting each ground of relief.  See Rule 1(b) of the Rules Governing Section 2254 cases.  The petition must also state the relief requested and be signed under the pains and penalties of perjury. Rule 2(c).  Although this Court does not require by local rule that habeas petitioners use any particular form for the petition, a habeas petition still must substantially comply with the requirements for form outlined in Rule 2, so that the Court may determine if there is any basis for habeas relief.  See, e.g., Goncalves v. Reno, 144 F.3d 110, 113 (1st Cir. 1998). Here, Paquette's filings are replete with deficiencies and he has not complied with this mandate.

      Finally, to the extent Paquette is seeking habeas relief, it appears this Court lacks subject matter jurisdiction over the matter, since, at the time he filed the petition, Paquette was in "custody" in the District of Rhode Island. A writ of habeas corpus must be "directed to the person having custody of the person detained." 28 U.S.C. § 2243.  The court issuing the writ must have personal jurisdiction over the person who holds the petitioner in custody.  Vasquez v. Reno, 233 F.3d 688, 690 (1st Cir. 2000), cert. denied, sub nom. Vasquez v. Ashcroft, 122 S. Ct. 43 (2001). Paquette's legal custodian would have been the warden of ACI in Rhode Island, as the individual having day-to-day control over the facility in which he was being detained.  Id. at 694. Thus, Pacquette should have filed a habeas request with the federal court in the District of Rhode Island, and not in this district.

      B.  Paquette's claims are duplicative of a prior §1983 civil action in this Court.

      On April 18, 2002, Paquette filed what was categorized as a §1983 action in this District,

assigned to Judge Mark L. Wolf as <u>Paquettte v. Commonwealth of Massachusetts</u>, C.A. 02-10667-MLW[3]. At that time Paquette was a prisoner at MCI Concord, MA. In that complaint, as here, Pacquette filed a motion to renounce his citizenship and a motion for deportation. On May 16, 2002, Judge Wolf issued a Memorandum and Order (Docket No. 4) denying the motion to proceed *in forma pauperis* and denying both the motion to renounce citizenship and the motion for deportation, and allowing Paquette forty-two (42) days to file a petition or a complaint accompanied by a completed *in forma pauperis* application.

On August 14, 2002, Judge Wolf dismissed the case for want of prosecution, and the case was closed on August 16, 2002. Subsequently, on August 23, 2002, Paquette filed a letter seeking reconsideration of the May 16, 2002 Memorandum and Order. On February 14, 2003, the motion for reconsideration was denied as legally frivolous. (Docket No. 7). No appeal was timely filed.

Thus, to the extent that Paquette seeks the same relief of renunciation of citizenship and immediate deportation to another country, those issues have been denied on the merits and Paquette is barred from raising them in this action.

IV. <u>Paquette fails to state a cognizable claim for renunciation and deportation</u>.

Even considering Paquette's claims anew, he fails to state a cognizable cause of action, with respect to either the renunciation claim or the deportation claim.

    A. <u>The Court lacks authority to accept Paquette's renunciation of his American Citizenship or</u>

---

[3] Because that prior case has been closed for over two (2) years, this matter is not deemed related, pursuant to Local Rule 40.1(e)(1), despite the fact that the claims currently made are virtually identical. Moreover, Judge Wolf had directed in his Memorandum and Order that any subsequently filed petition or complaint was to be assigned a difference case number and a different Judge.

<u>to compel a governmental agency to do so.</u>

Although Paquette is correct that he has a right to renounce his U.S. citizenship, <u>Koos v. Holm</u>, 204 F. Supp 2d at 1107 (W.D. Tenn. 2002), <u>citing</u> <u>Nishikawa v. Dulles</u>, 356 U.S. 129, 139 (1958), that right is not immediate or absolute. The right to voluntary renunciation of citizenship by a native or naturalized citizen (Paquette claims to be the latter), is governed by the requisites of the Immigration and Nationality Act, 8 U.S.C. §1481.[4]

---

[4]Section 1481 provides as follows:

§ 1481. Loss of nationality by native-born or naturalized citizen; voluntary action; burden of proof; presumptions

(a) A person who is a national of the United States whether by birth or naturalization, shall lose his nationality by voluntarily performing any of the following acts with the intention of relinquishing United States nationality--

> (1) obtaining naturalization in a foreign state upon his own application or upon an application filed by a duly authorized agent, after having attained the age of eighteen years; or
>
> (2) taking an oath or making an affirmation or other formal declaration of allegiance to a foreign state or a political subdivision thereof, after having attained the age of eighteen years; or
>
> (3) entering, or serving in, the armed forces of a foreign state if (A) such armed forces are engaged in hostilities against the United States, or (B) such persons serve as a commissioned or non-commissioned officer; or
>
> (4)(A) accepting, serving in, or performing the duties of any office, post, or employment under the government of a foreign state or a political subdivision thereof, after attaining the age of eighteen years if he has or acquires the nationality of such foreign state; or
>
> (B) accepting, serving in, or performing the duties of any office, post, or employment under the government of a foreign state or a political subdivision thereof, after attaining the age of eighteen years for which office, post, or employment an oath, affirmation, or declaration of allegiance is required; or
>
> (5) making a formal renunciation of nationality before a diplomatic or consular officer of the United States in a foreign state, in such form as may be prescribed by the Secretary of State; or

Paquette has not complied with any of the provision in §1481, and this Court lacks authority to accept Paquette's renunciation of his citizenship. Moreover, to the extent that he claims this is violative of his Fourteenth Amendment rights to immediately renounce his citizenship and be deported, such an argument is without merit. "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Koos, 204 F. Supp. 2d at 1108, citing Hewitt v. Helms, 459 U.S. 460, 467 (1983); Bell v. Wolfish, 441 U.S. 520, 546 (1979); Wolff v. McDonnell, 418 U.S. 539, 546 (1974).

Thus, after release, Paquette is free to exercise this right of renunciation in any manner

---

(6) making in the United States a formal written renunciation of nationality in such form as may be prescribed by, and before such officer as may be designated by, the Attorney General, whenever the United States shall be in a state of war and the Attorney General shall approve such renunciation as not contrary to the interests of national defense; or

(7) committing any act of treason against, or attempting by force to overthrow, or bearing arms against, the United States, violating or conspiring to violate any of the provisions of section 2383 of Title 18, or willfully performing any act in violation of section 2385 of Title 18, or violating section 2384 of Title 18 by engaging in a conspiracy to overthrow, put down, or to destroy by force the Government of the United States, or to levy war against them, if and when he is convicted thereof by a court martial or by a court of competent jurisdiction.

(b) Whenever the loss of United States nationality is put in issue in any action or proceeding commenced on or after September 26, 1961 under, or by virtue of, the provisions of this chapter or any other Act, the burden shall be upon the person or party claiming that such loss occurred, to establish such claim by a preponderance of the evidence. Any person who commits or performs, or who has committed or performed, any act of expatriation under the provisions of this chapter or any other Act shall be presumed to have done so voluntarily, but such presumption may be rebutted upon a showing, by a preponderance of the evidence, that the act or acts committed or performed were not done voluntarily.

prescribed by §1481.  See Koos, 204 F. Supp. 2d at 1108.  Even assuming he had a right to immediate renunciation,  Paquette has failed to demonstrate that he attempted to begin the process by invoking §1481, or was otherwise unable to do so, and therefore his claim in this Court would be premature.

  B.  Paquette does not have a private right of action to compel deportation.

  Assuming, *arguendo*, that Paquette was able to renounce his citizenship thereby becoming a deportable "alien"[5] under the Immigration and Nationality Act (INA), that statute does not provide inmates with a private right of action to compel deportation.  8 U.S.C. §1231(h) of the INA.  The INA of 1952 governs the detention and removal of aliens who have been ordered removed.  That statute provides that "nothing in this section shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any other party against the United States or its agencies or officers or any other person." 28 U.S.C. §1231(h). See United States v. Marin-Castaneda, 134 F.3d 551,556 (3rd Cir. 1998), cert. denied, 523 U.S. 1144 (1998) (neither the language or legislative history of §1231(h) or its predecessor sections create a private cause of action on part of alien seeking to expedite deportation); Perez v. INS, 979 F.2d 299, 301 (3rd Cir. 1992)(same).

  Section §1231(a)(4)(D) provides that "[n]o cause or claim may be asserted under this paragraph against any official of the United States or of any state to compel the release, removal, or consideration for release or removal of any alien." 8 U.S.C. §1231(a)(4)(D).  Thus, "courts have

---

[5]"Any person not a United States citizen or national is classified as an alien" under 8 U.S.C. §1101(a)(3).  Davis v. District Director, Immigration & Naturalization Serv., 481 F. Supp. 1183 (D.C. 1979).

11

uniformly held that no alien has an individual right to compel the Attorney General or the INS to deport him." Koos, 207 F. Supp. 2d at 1109, citing Prieto v. Gluch, 913 F.2d 1159 (6th Cir. 1990); Thye v. United States, 109 F.3d 127 (2nd Cir. 1997) (per curiam); Hernandez-Avols v. Immigration & Naturalization Serv., 50 F.3d 842 (10th Cir. 1995); Campos v. Immigration & Naturalization Serv., 62 F.3d 311 (9th Cir. 1995)(other citations omitted.)  See also, Limas v. McNary, 799 F. Supp 1259, 1262-63 (D. Mass. 1992)(Woodlock, J.)(no private cause of action to compel Attorney General to begin deportation proceedings as expeditiously as possible after date of conviction; mandamus pursuant to 28 U.S.C. §1361 does not lie against INS).

In view of this, the Court lacks jurisdiction to issue a deportation order for Paquette, or to compel a governmental agency to do so. See Koos, 207 F. Supp.2d at 1109. (other citations omitted.)

  C. Paquette fails to establish a §1983 cause of action

To the extent that Paquette's motion for renunciation constitutes a §1983 action based on alleged violations of his libery interests, he has failed to state a 14th Amendment cognizable claim, for the reasons discussed above. To the extent that Paquette brings civil rights claims for violations with respect to the underlying criminal prosecution, he must allege (1) that the defendants were acting under color of state law and (2) that defendants deprived plaintiff of a right secured by the Constitution and the laws of the United States. See West v. Atkins, 487 U.S. 42, 48 (1988); Rumford Pharmacy, Inc. v. City of East Providence, 970 F.2d 996, 998 (1st Cir. 1992). Here, Paquette has failed to establish with any specificity the bases for such a claim, and he does not specify the relief sought, except to ask

for the Court to look into the matter.[6]

---

[6]Additionally, although no dates are asserted, it appears Paquette's conviction was in 1994 or 1995, and therefore this type of claim would likely be barred by the three year statute of limitations applicable to §1983 actions. See Owens v. Okure, 488 U.S. 235 (1989); Wilson v. Garcia, 471 U.S. 261 (1985); See also, Nieves v. McSweeney, 241 F.3d 46, 52-53 (1st Cir. 2001) (§ 1983) Cf. Rodriguez-Garcia v. Municipality of Caguas, 354 F.3d 91, 96 (1st Cir. 2004) (§§ 1981, 1983, and 1985 borrow the forum state's statute of limitations for personal injury claims); Mass. Gen. Laws ch. 260, § 2A (three-year statute of limitations for personal injury claims).

Moreover, the favorable termination rule would likely bar any civil rights claims to the extent it calls into question the bona fides of the underlying conviction. In Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court held that where a prisoner seeks damages for an allegedly unconstitutional conviction, he has no cause of action because the success of the suit would effectively invalidate the prisoner's underlying conviction and sentence. Heck, 512 U.S. at 486-487. Here, Paquette does not make a claim for relief. However, in order to recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. Id. at 486. The "favorable termination" rule of Heck has been applied to suits by defendants challenging their pending criminal proceedings. See Nelson v. Doe, No. 04 C 2365, 2004 WL 1558810, at *1 (N.D. Ill. June 22, 2004) (dismissing defendant's claims about effectiveness of his public defenders); accord Gill v. State of Texas, No. Civ. A. 503CV-298-C, 2004 WL 852285, at * 3 (N.D. Tex. Apr. 21, 2004) (dismissing claims that defense counsel was ineffective in pending criminal proceedings). Thus, all of plaintiff's claims are subject to dismissal on these grounds as well. See, e.g., Figueroa v. Rivera, 147 F.3d 77, 80 (1st Cir. 1998) (dismissing suit alleging that police officers and prosecutor "conspired" to convict prisoner); White v. Gittens, 121 F.3d 803, 806 (D. Mass. 1997) (suit contending that state parole revocation was constitutionally invalid barred by Heck). Because, however, the action is dismissed on other grounds, I need not decide this case these two issues . Moreover, because I find no valid federal claim, I need not address any possible theories based on state law causes of action, such as malicious prosecution. In any event, because plaintiff's federal claims are being dismissed, grounds do not exist for independent federal subject-matter jurisdiction over any state-law claims in plaintiff's complaint. Of course, in the absence of such jurisdiction, the Court may still exercise supplemental jurisdiction over the state law claims. 28 U.S.C. § 1367(a). The exercise of such jurisdiction, however, is discretionary, United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966), and a federal court may decline to exercise supplemental jurisdiction over a plaintiff's state law claims when the federal claims drop out of the action before trial. Martinez v. Colon, 54 F.3d 980, 990 (1st Cir. 1995) (dismissal of state claim appropriate when no "legitimate" federal question remained in advance of trial); accord Rose v. Baystate Med. Ctr., Inc., 985 F. Supp.

Paquette merely makes sparse assertions with no factual support, against unknown persons in the District Attorney's office, with respect to the course of his prosecution on criminal charges. In any event, those unnamed prosecutors acting within the scope of their official duties would be entitled to absolute immunity. Imbler v. Pachtman, 424 U.S. 409, 422 (1976). Thus, Plaintiff's claims against the Worcester County District Attorney's Office are not cognizable and must be dismissed.

V.   Paquette's request for Appointment of Counsel is denied.

Based on the foregoing, Paquette has failed to state any cognizable legal claims which would warrant the appointment of counsel either for a habeas petition or a civil rights action, and accordingly, the request for counsel is denied.

## CONCLUSION

In light of the foregoing, it is hereby ORDERED:

1. Paquette's Application to Proceed *in forma pauperis* is denied as moot in view of the summary dismissal of this action;

2. Paquette's Complaint is dismissed in its entirety: the Motion for Denaturalization is Denied; the Motion for Renunciation of Citizenship is Denied.

3. Paquette's Motion for appointment of counsel is Denied.

SO ORDERED.

Dated in Boston, Massachusetts this 8th day of December, 2004.

    /s/ William G. Young
WILLIAM G. YOUNG

---

211, 218-219 (D. Mass. 1997). I decline to exercise supplemental jurisdiction here.

CHIEF, UNITED STATES DISTRICT JUDGE